# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP243-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Adam Walsh, Attorney at Law: <br><br> Office of Lawyer Regulation, <br>       Complainant, <br>    v. <br> Adam Walsh, <br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST WALSH

| | |
|---|---|
| OPINION FILED: | March 23, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

**2017 WI 24**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP243-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Adam Walsh, Attorney at Law.**

**Office of Lawyer Regulation,**

      **Complainant,**

    **v.**

**Adam Walsh,**

      **Respondent.**

**FILED**

**MAR 23, 2017**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Attorney Adam Walsh has filed a petition for the consensual revocation of his license to practice law in Wisconsin pursuant to Supreme Court Rule (SCR) 22.19.[1] Attorney

---

[1] SCR 22.19 provides: Petition for consensual license revocation.

(1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme

(continued)

Walsh's petition states that he cannot successfully defend against the allegations of professional misconduct arising out of two Office of Lawyer Regulation (OLR) investigations concerning his conduct. An OLR summary of those investigations and of the potential allegations of professional misconduct is attached to Attorney Walsh's petition.

---

court a petition for the revocation by consent or his or her license to practice law.

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

(3) If a complaint has not been filed, the petition shall be filed in the supreme court and shall include the director's summary of the misconduct allegations being investigated. Within 20 days after the date of filing of the petition, the director shall file in the supreme court a recommendation on the petition. Upon a showing of good cause, the supreme court may extend the time for filing a recommendation.

(4) If a complaint has been filed, the petition shall be filed in the supreme court and served on the director and on the referee to whom the proceeding has been assigned. Within 20 days after the filing of the petition, the director shall file in the supreme court a response in support of or in opposition to the petition and serve a copy on the referee. Upon a showing of good cause, the supreme court may extend the time for filing a response. The referee shall file a report and recommendation on the petition in the supreme court within 30 days after receipt of the director's response.

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

¶2 Attorney Walsh was admitted to the practice of law in Wisconsin in January 2008. He most recently practiced in Madison under the name Affordable Legal Services of Wisconsin. Attorney Walsh sold the law firm to another attorney effective January 1, 2015. He continued to work at the firm, however, until November 25, 2015.

¶3 Attorney Walsh has been the subject of professional discipline on one prior occasion. In 2015 he consented to the imposition of a private reprimand pursuant to SCR 22.09 for improperly using his client trust account credit card on three separate occasions to disburse trust account funds prior to the deposit and availability of those funds for the respective clients and for failing to maintain and to produce required trust account records. Private Reprimand 2015-1 (electronic copy available at https://compendium.wicourts.gov/app/raw/002757.html).

¶4 Attorney Walsh filed a petition for the voluntary resignation of his license to practice law in this state in June 2016. Because the OLR's response to that petition indicated that it was conducting an investigation regarding Attorney Walsh, his voluntary resignation petition has been held in abeyance. In light of his current petition, his petition for voluntary resignation is being dismissed pursuant to a separate order being issued simultaneously with this opinion.

¶5 The OLR summary attached to Attorney Walsh's petition for consensual revocation sets forth two main areas of investigation into potential ethical violations.

3

¶6 The first area involves Attorney Walsh's multiple instances of insufficient balances in his client trust account. Attorney Walsh maintained a client trust account at JP Morgan Chase Bank in Madison from November 19, 2010, until October 14, 2015. At the time he closed the account, Attorney Walsh withdrew for himself the remaining balance of $868.26. A check Attorney Walsh had issued against the trust account, however, was subsequently presented for payment on November 3, 2015, and was returned for insufficient funds. Attorney Walsh claims that he reimbursed the recipient of the trust account check via other means.

¶7 Although the OLR's investigation was hampered by Attorney Walsh's refusal or inability to provide records for his trust account, the available information shows that on multiple occasions, the trust account contained substantially less money than it should have in 2014 and 2015. For example, bank records show that the balance in the trust account was $469,349.55 on May 31, 2014. At that time, the trust account should have contained at least $78,351.86 in funds belonging to two clients, J.M.G. and M.J.E. Subtracting that amount from the balance would leave a remaining balance of $390,997.69. This amount, however, was more than $50,000 less than Attorney Walsh had previously admitted in a letter he should have been holding for another client, a substantial trust. Indeed, that amount would have been more than $78,000 less than the amount identified in the March 28, 2014 annual report of the trust. Moreover, the limited records the OLR was able to obtain indicate that

4

Attorney Walsh deposited over $589,000 into his trust account on behalf of the trust, but those records also show total disbursements of only approximately $530,000 to proper recipients of the trust's funds. Because the OLR has not been able to obtain complete records, it cannot tell whether there were other disbursements to proper recipients for which records are not available or whether Attorney Walsh converted some or all of the remaining trust's funds to his own use.

¶8 Similar possible shortcomings in disbursements of other client funds appear in connection with at least three other clients. The amounts that do not appear to have been disbursed to the clients or to other proper recipients, however, are substantially smaller than was the case with the trust's money. What is clear is that in at least one case, the balance of Attorney Walsh's client trust account dipped more than $30,000 below the amount that should have been held in trust for just one client. Thus, that amount of client funds had to have been converted to the use of other clients or to Attorney Walsh's personal use.

¶9 Indeed, Attorney Walsh admitted to the OLR that starting at least as far back as 2011 he had placed substantial sums of his own money into the trust account and had not kept track of those funds. Given the fact that on multiple occasions the balance in his trust account was substantially less than the amounts that were owed to clients, one can only conclude that Attorney Walsh needed to deposit his own funds into the account

5

at times to avoid overdrafts and to repay amounts he had previously converted to his own use.

¶10  In the course of its investigation, the OLR asked Attorney Walsh to produce a transaction register, client ledgers, and a monthly reconciliation for his trust account. Attorney Walsh failed to produce any of these requested records. He produced only a single bank statement for October 2015, the month prior to closing the account.  His response to the OLR's request stated merely that he was no longer practicing law and that he did not possess any further records.

¶11  The OLR's summary indicates that its investigation of Attorney Walsh's handling of his client trust account involves Attorney Walsh's potential violations of the following Supreme Court Rules:   SCR 20:8.4(c);[2] SCR 20:1.15(b)(1);[3] former SCR

---

[2] SCR 20:8.4(c) provides:  "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule."  See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

6

20:1.15(b)(3);[4] former SCR 20:1.15(e)(4)c.;[5] former SCR 20:1.15(e)(6) and (7);[6] and former SCR 20:1.15(f)(1)a., b., and g.[7]

---

[4] Former SCR 20:1.15(b)(3) provided: "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[5] Former SCR 20:1.15(e)(4)c. provided: "A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction."

[6] Former SCR 20:1.15(e)(6) and (7) provided:

(6) A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation.

(7) All trust account records have public aspects related to a lawyer's fitness to practice. Upon request of the office of lawyer regulation, or upon direction of the supreme court, the records shall be submitted to the office of lawyer regulation for its inspection, audit, use, and evidence under any conditions to protect the privilege of clients that the court may provide. The records, or an audit of the records, shall be produced at any disciplinary proceeding involving the lawyer, whenever material. Failure to produce the records constitutes unprofessional conduct and grounds for disciplinary action.

[7] Former SCR 20:1.15(f)(1)a. provided: The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

(continued)

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

Former SCR 20:1.15(f)(1)b. provided:

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

Former SCR 20:1.15(f)(1)g. provided:

For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

¶12 The second investigation that the OLR has been conducting relates to Attorney Walsh's representation of O.B. Attorney Walsh agreed to represent O.B. in attempting to have his felony convictions expunged or to seek a pardon for those convictions. According to his fee agreement with O.B., Attorney Walsh accepted an advanced flat fee of $1,500 at or near the time of entering into the representation and deposited the advanced fee into his law firm's business account. Attorney Walsh claimed to the OLR that he had done work on O.B.'s behalf and was able to describe some of that work. According to the OLR's summary Attorney Walsh promised O.B. in July 2015 that he would be following up on a lead that required research, but warned that O.B. would likely be out of luck if the research did not yield favorable results. Attorney Walsh, however, failed to communicate the results of his research to O.B. He then failed to advise O.B. in November 2015 that he was leaving the law firm and was ceasing his practice of law. Attorney Walsh failed to provide O.B. with any of the notices that were required when an attorney placed an advanced fee into the attorney's business account and utilized the alternative advanced fee procedure outlined in former SCR 20:1.15(b)(4m).[8] Indeed, Attorney Walsh

---

[8] Former SCR 20:1.15(b)(4m) provided:

Alternative protection for advanced fees. A lawyer who accepts advanced payments of fees may deposit the funds in the lawyer's business account, provided that review of the lawyer's fee by a court of competent jurisdiction is available in the proceeding
(continued)

9

to which the fee relates, or provided that the lawyer complies with each of the following requirements:

a. Upon accepting any advanced payment of fees pursuant to this subsection, the lawyer shall deliver to the client a notice in writing containing all of the following information:

1. the amount of the advanced payment;

2. the basis or rate of the lawyer's fee;

3. any expenses for which the client will be responsible;

4. that the lawyer has an obligation to refund any unearned advanced fee, along with an accounting, at the termination of the representation;

5. that the lawyer is required to submit any unresolved dispute about the fee to binding arbitration within 30 days of receiving written notice of such a dispute; and

6. the ability of the client to file a claim with the Wisconsin lawyers' fund for client protection if the lawyer fails to provide a refund of unearned advanced fees.

b. Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

(continued)

10

failed to provide O.B. with a final accounting that showed how he had earned the $1,500 flat fee.

¶13 The OLR was unable to determine the full extent of Attorney Walsh's work on O.B.'s behalf because Attorney Walsh says that he is no longer in possession of his billing software, and the lawyer who purchased the law firm from Attorney Walsh states that she is unable to access Attorney Walsh's billing records.

¶14 The OLR's summary indicates in connection with Attorney Walsh's representation of O.B. that it is investigating possible violations of the following Supreme Court Rules: SCR 20:1.3;[9] SCR 20:1.4(a);[10] SCR 20:1.16(d);[11] and former SCR 20:1.15(b)(4m).

---

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

c. Upon timely receipt of written notice of a dispute from the client, the lawyer shall attempt to resolve that dispute with the client, and if the dispute is not resolved, the lawyer shall submit the dispute to binding arbitration with the State Bar Fee Arbitration Program or a similar local bar association program within 30 days of the lawyer's receipt of the written notice of dispute from the client.

d. Upon receipt of an arbitration award requiring the lawyer to make a payment to the client, the lawyer shall pay the arbitration award within 30 days, unless the client fails to agree to be bound by the award of the arbitrator.

[9] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

11

¶15 Attorney Walsh's petition for consensual revocation asserts that he is seeking the consensual revocation of his license freely, voluntarily, and knowingly. He states that he cannot successfully defend himself against the allegations of misconduct summarized above and more fully described in the OLR's summary. Attorney Walsh also acknowledges that he

---

[10] SCR 20:1.4(a) provides that a lawyer shall:

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests by the client for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

[11] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advanced payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

12

understands he is giving up his right to contest any of the OLR's allegations, as well as his right to have the assistance of counsel in this matter. Finally, the petition acknowledges that if the court grants the petition and revokes his license, Attorney Walsh will be subject to the requirements of SCR 22.26 and, should he ever wish to seek the reinstatement of his license, the reinstatement procedure set forth in SCRs 22.29-22.33.

¶16 The OLR's summary and its recommendation in support of the petition make clear that it is not seeking a restitution award in this case. While it is clear that there were multiple instances of conversion of trust account funds (either for the benefit of other clients or for Attorney Walsh's personal use), the OLR states that it has not been able, given the limited records and information it was able to obtain, either to identify to whom restitution might be owed or to arrive at any reasonably ascertainable restitution amounts. The OLR further notes that despite the apparent looseness with which Attorney Walsh handled his client trust account, no individual has notified it that Attorney Walsh still owes him or her any money. Similarly, given the lack of billing records, the OLR cannot determine with any reasonable certainty that O.B. should receive a refund of any particular amount of his advanced fee from Attorney Walsh.

¶17 Having reviewed Attorney Walsh's petition, the OLR's summary of possible misconduct, and its written recommendation in favor of the petition, we conclude that the petition for

13

consensual revocation should be granted. It is clear from the OLR's summary of misconduct allegations that Attorney Walsh treated his client trust account as if it were a community fund at his constant disposal. His disregard for the core ethical value of protecting the integrity of each client's funds and his complete rejection of any obligation to maintain the required records that are necessary to keep client funds in order represent serious breaches of his ethical obligations as a lawyer in this state. His ethical lapses are compounded by his apparent lack of diligence and communication in the representation of O.B. Moreover, the private reprimand previously imposed on Attorney Walsh demonstrates that there is a pattern of misconduct.

¶18 Given the OLR's admitted inability to determine whether any particular client or third party is owed any money by Attorney Walsh, and to arrive at a reasonably ascertainable amount, we have no choice but to accede to the OLR's request not to award restitution in this matter. We are disturbed that this outcome appears to result from Attorney Walsh's failure to create, preserve, and/or produce the necessary records. We note, however, that if Attorney Walsh were ever to seek the reinstatement of his license, he would be required to prove affirmatively that he had made full restitution to all persons injured or harmed by his misconduct. See SCR 22.29(4m).

¶19 Finally, because this matter is being resolved via a petition for consensual revocation without the need to appoint a

14

referee or hold an extensive hearing, we do not impose any costs on Attorney Walsh.

¶20 IT IS ORDERED that the petition of Adam Walsh for the consensual revocation of his license to practice law in Wisconsin is granted.

¶21 IT IS FURTHER ORDERED that the license of Adam Walsh to practice law in Wisconsin is revoked, effective the date of this order.

¶22 IT IS FURTHER ORDERED that, to the extent he has not already done so, Adam Walsh shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.